UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEAN G. FELDER, | |
| Plaintiff, | **OPINION AND ORDER** |
| - against - | 17 Civ. 5045 (ER) |
| UNITED STATES TENNIS ASSOCIATION INCORPORATED, | |
| Defendant. | |

Ramos, D.J.:

*Pro se* Plaintiff Sean G. Felder brings this action against the United States Tennis Association Incorporated ("Defendant" or "USTA"), alleging employment discrimination and retaliation. Before the Court is the USTA's motion to dismiss the Complaint. For the reasons discussed below, Defendant's motion is GRANTED. Plaintiff will be given an opportunity to file an amended complaint.

## I. BACKGROUND[1]

Felder is a 50-year old black male who currently resides in New York City. Doc. 31-2 at 9, 11. Felder states that AJ Security[2] hired him on August 26, 2016. Doc. 32 at 1; Doc. 36 at

---

[1] The Court accepts as true for purposes of this motion the allegations contained in the Complaint, as well as facts in Plaintiff's papers that are consistent with the allegations contained in his Complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."); *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda are consistent with the allegations contained in the Complaint, they may be read as supplements to the pleadings.").

[2] The New York State Division of Human Rights ("NYSDHR") record refers to Felder's employer as "RJ Security." However, Felder's pleadings have since suggested that the correct name of his employer may be "AJ Security" or "AJ Squared Security." Doc. 34 at 1; Doc. 37 at 1; Doc. 43 at 1. Defendant has requested that the Court conform the pleadings to the proof such that "AJ Security" and "AJ Squared Security" be substituted for "RJ Security" as appropriate. Reply Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint at n.1. The Court accepts this request and shall subsequently refer to the entity in question as "AJ Security."

1.[3] The USTA subcontracts with Contemporary Securities Services, Inc. ("CSC") to staff tennis events in the United States, including the U.S. Open Tennis Tournament. Doc 31-4 at 2-3. AJ Security appears to be a subcontractor of CSC. Doc. 31-4 at 2-3; Doc. 31-5 at 3. Felder states that Terrance Rauls, his supervisor at AJ Security, hired him on August 26, 2016, and requested that the USTA provide Felder with credentials to work seasonal security for two weeks at the 2016 US Open. Doc. 31-2 at 12; Doc. 32 at 1; Doc. 36 at 1. Felder called the US Open or USTA credential center on August 27 and was told that his credentials were ready. Doc. 31-1 at 11; Doc. 36 at 1. Per Mr. Rauls' instructions, Felder went to the credential office at Flushing, Queens on August 28 or 29, but was denied credentials. Doc. 25 at 2. Doc. 31-2 at 12; Doc. 36 at 1. On August 29, when Plaintiff called Mr. Rauls to inquire regarding the status of his credentials, Mr. Rauls informed Felder that "USTA retaliated due to the 8/3/10 complaint [against] CSC Security." Doc. 31-2 at 12; Doc. 25 at 2. This statement refers to a 2012 lawsuit Felder filed against CSC concerning a prior alleged incident of racial discrimination by Scott Dennison, a Vice-President at CSC. Doc 31-1 at 11.

The next day, on August 30, 2016, Felder filed a verified complaint against the USTA with both the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging employment discrimination and harassment based on race. Doc 31-1. In the administrative complaint, Felder referenced the previous lawsuit that he filed against CSC, which settled in 2015. Doc 31-1 at 11. *Id*. Felder asserts in this case that the USTA failed to hire him in August 2016 in retaliation for the complaint he filed against CSC in 2012. *Id*. On February 27, 2017, the NYSDHR dismissed

---

[3] Because Plaintiff's pleadings lack internal pagination, the Court cites to the numbers generated on the pages by the ECF system.

2

Felder's complaint after determining that he had never applied for a position with the USTA and thus the USTA had never denied him a position in violation of State Human Rights Law. Doc. 31-4 at 3. On May 1, 2017, the EEOC adopted the findings of the NYSDHR and issued a right-to-sue notice. Doc. 31-2 at 17.

On July 5, 2017, Felder filed the instant lawsuit. Felder alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), the Age Discrimination Employment Act of 1967 ("ADEA"), and the New York State Human Rights Law ("NYSHRL"). The USTA now moves to dismiss the Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Doc. 28.

## II. LEGAL STANDARD

### A. Rule 12(c) Motion to Dismiss Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Holmes v. Apple Inc.*, 2018 WL 3542856, at *3 (S.D.N.Y. 2018) (citing *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006)) (internal citation omitted)). On a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, the Court is not required to credit legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain enough factual matter to state a

claim to relief that is plausible on its face. *Id.* at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

### B. *Pro Se* Plaintiff

The same standard applies to motions to dismiss for *pro se* plaintiffs. *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc.*, 2017 WL 1194686, at *5 (S.D.N.Y. 2017) (citing *Zapolski v. Fed. Repub. of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011)). The Court remains obligated to construe a *pro se* complaint liberally, and to interpret a *pro se* plaintiff's claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. A *pro se* complaint that "tenders

4

naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557).

## III. DISCUSSION

Felder asserts claims of race discrimination, age discrimination, and retaliation pursuant to Title VII, § 1981, the ADEA, and NYSHRL. For the reasons discussed below, the claims are dismissed. Felder will, however, be granted leave to file an Amended Complaint to replead his Title VII and § 1981 claims.

### A. ADEA Claims

Felder's claims under the ADEA are barred by his failure to exhaust administrative remedies. In order to bring a claim under the ADEA in federal court, a plaintiff must first exhaust his administrative remedies with the EEOC or the equivalent state-level agency. *Semeraro v. Woodner Co.*, 2018 WL 3222542, at *4 (S.D.N.Y. 2018) (citing *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 562-63 (2d Cir. 2006)). Before a plaintiff may file a federal suit under the ADEA: (1) the claim forming the basis of the suit must first be raised in the plaintiff's charge with the EEOC or the equivalent state agency, and (2) the charge must be filed with the EEOC within 180 days of the allegedly unlawful act, or with the equivalent state agency within 300 days. *See Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). ADEA plaintiffs need only wait sixty days after filing the EEOC or NYSDHR charge before bringing suit. *Holowecki*, 440 F.3d at 563 (quoting *Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 166 (2d Cir. 1998)). Failure to exhaust these administrative remedies constitutes a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Williams*, 458 F.3d at 70. Felder did not include an age discrimination charge in his administrative complaint. Doc 31-1 at 8. Accordingly, he has failed to exhaust his administrative remedies under the ADEA.

5

Even if a claim was not included in a plaintiff's EEOC charge, however, a plaintiff may still raise the claim in a district court complaint if the claim is "reasonably related" to the allegations contained in the charge. *Williams*, 458 F.3d at 70 (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). Felder's ADEA claims do not fall under an applicable exception. The Second Circuit recognizes three circumstances where a claim would be considered reasonably related: (1) if the conduct complained of would fall within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge; (2) if the claim alleges retaliation by an employer against the employee for filing the charge; and (3) if the claim alleges further incidents of discrimination carried out in precisely the same manner alleged in the charge. *Id.* at 70 & n.1 (quoting *Butts*, 990 F.2d at 1402-03; and *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001)). None of these circumstances are present in the instant case, as his NYSDHR complaint was based solely on race, and age discrimination cannot be reasonably expected to grow out of that charge. Felder's failure to exhaust his administrative remedies divested this Court of subject matter jurisdiction over his ADEA claims. Accordingly, those claims are dismissed with prejudice.

### B. Title VII and § 1981 Claims

#### 1. Failure to Hire

Felder's claims of discriminatory and retaliatory failure to hire under Title VII and § 1981 are analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate a *prima facie* case of discrimination. *Id.* at 802. In order to do so, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and

6

(4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010). Of course, an "essential element of a failure to hire claim is that a plaintiff allege that she applied for a specific position and was rejected." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 445-46 (S.D.N.Y. 2018) (citing *Carr v. N. Shore—Long Island Jewish Health Sys.*, 2015 WL 4603389, at *3 (E.D.N.Y. 2015). *See also Brown v. Coach Stores Inc.,* 163 F.3d 706, 710 (2d. Cir.1998) (internal citation omitted). Defendant maintains that Felder never applied for a position with the USTA. Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Mem.") at 1. Felder does not allege in his pleadings that he applied for a position with the USTA. Instead, he appears to allege that the USTA rejected the attempts of AJ Security and/or CSC Security to secure a temporary security placement for him at the 2016 US Open. Doc. 31-2 at 12; Doc. 32 at 1; Doc. 36 at 1. A plaintiff might not be required to allege that he applied for a specific position "where the facts of a particular case make an allegation of a specific application a quixotic requirement." *Brown*, 163 F.3d at 710. In the instant case, Felder does not allege facts that would render the application requirement quixotic or inappropriate. Thus, Felder has failed to state a claim for failure-to-hire.

### 2. Unlawful Employment Practices

To hold an employer liable for unlawful employment practices under Title VII, an employer-employee relationship must have existed between the parties at the time of the alleged unlawful conduct. *Kern v. City of Rochester*, 93 F.3d 38, 44-45 (2d Cir. 1996). *See also Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). The same substantive standards of Title VII also apply under § 1981. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). Title VII, by its terms, applies only to "employees," 42 U.S.C. § 2000e(f). The

7

Supreme Court has ruled that the definitions of "employee," "employer," and "employment" are to be determined under the common law of agency whenever statutes have failed to specifically define them. *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318, 323 (1992). While *Darden* addressed employment in the ERISA context, courts have adopted its reasoning to apply the common-law agency test to Title VII and other employment discrimination statutes. *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008). The initial requirement under the common law agency test of employment is a "threshold showing that [the company] hired and compensated" a plaintiff. *Gilani v. Hewlett-Packard Co.*, 2018 WL 4374002, at *4 n.7 (S.D.N.Y. Sept. 12, 2018) (quoting *Gulino*, 460 F.3d at 379). Felder has not alleged that the USTA hired or compensated him, and thus he is not an employee of Defendant under the common law agency test.

A plaintiff may also attempt to "assert employer liability against an entity that is not formally his or her employer" under the "single employer" or "joint employer" doctrines. *Arculeo v. On-Site Sales & Mktg., L.L.C.*, 425 F.3d 193, 197 (2d Cir. 2005). The joint-employer doctrine holds that "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Gilani*, 2018 WL 4374002, at *5 (citing *Arculeo*, 425 F.3d at 198).

The single employer doctrine is applicable "where two nominally separate entities are actually part of a single integrated enterprise." *Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985) (internal citation omitted). Felder has not alleged that the USTA has such a relationship with either CSC or AJ Security. The record suggests that the USTA

8

subcontracts with CSC, which appears in turn subcontract with AJ Security; there is no indication of common ownership or management between the USTA, CSC, and AJ Security. Doc 31-4 at 2-3; Doc. 31-4 at 2-3; Doc. 31-5 at 3.

Application of the joint-employer doctrine is particularly useful in situations – like this one – of "temporary employment or staffing agencies and their client entities." *Gilani*, 2018 WL 4374002, at *5 (quoting *Farzan v. Wells Fargo Bank, N.A.*, 2013 WL 6231615, at *16 (S.D.N.Y. 2013), *subsequently aff'd sub. nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir 2015)). *See also Liotard v. FedEx Freight Corp.*, 2016 WL 1071034, at *5 (S.D.N.Y. 2016) (noting that joint employer doctrine is particularly relevant in staffing agency circumstances). A determination that a third-party entity is acting as joint employer requires "sufficient evidence of immediate control over the employees." *Liotard*, 2016 WL 1071034, at *4 (quoting *Clinton's Ditch*, 778 F.2d at 138 (2d Cir. 1985)). The Second Circuit has identified five factors that bear on the "immediate control" inquiry: "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Id.* (quoting *AT&T v. NLRB,* 67 F.3d 446, 451 (2d Cir. 1995) (internal citation omitted). In the instant case, there is no allegation that the USTA exercised the type of control over Felder that would be necessary to establish a joint employer. Application of the joint employer doctrine in the staffing agency context is plausible when the staffing agency has actually placed its employee with the third party, with whom it shares immediate control over the employee. *See, e.g., Gilani*, 2018 WL 4374002; *Liotard*, 2016 WL 1071034. Here,

Felder has not alleged that the USTA shared immediate control over him with AJ Security or CSC, and thus joint employer liability is inapplicable.[4]

### C. NYSHRL Claims

Felder's claims under NYSHRL are barred by the election of remedies doctrine. The NYSHRL provides, in relevant part, as follows:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . *unless such person had filed a complaint hereunder or with any local commission on human rights* . . . .

N.Y. Exec. Law § 297(9) (McKinney) (emphasis added). In other words, a plaintiff seeking to bring a discrimination claim under the NYSHRL is given a choice: he can either proceed in court or pursue an administrative complaint before a local human rights commission, but he cannot do both. *Levi v. RSM McGladrey, Inc.*, 2014 WL 4809942, at *9–10 (S.D.N.Y.

---

[4] In the instant case, the Complaint is liberally construed as also raising a *Sibley* "interference" claim on the theory that the USTA interfered with Felder's employment opportunities by rejecting his placement at the 2016 US Open. The *Sibley* "interference" theory of liability under Title VII originates from *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C. Cir 1973), in which the D.C. Circuit held that, because the purpose of Title VII is to "achieve equality of employment opportunities," a party can violate Title VII by acting in a manner that interferes with "access to the job market" even if that party is not an employer. *Id.* at 1340-41 (internal quotation marks and emphasis omitted). The Second Circuit applied the interference test in *Spirt v. Teachers Insurance and Annuity Ass'n*, 691 F.2d 1054 (2d Cir. 1982), *vacated and remanded on other grounds*, 463 U.S. 1223 (1983), holding that defendants that managed a pension fund for certain employees of Long Island University could be liable under Title VII because they interfered with the relationship between the University and its employees by maintaining "sex-distinct mortality tables," which had a disparate impact on female employees. *Id.* at 1062-63. However, since *Spirt*, the Second Circuit "has sharply limited the scope of that rule." *Yacklon v. E. Irondequoit Cent. Sch. Dist.*, 733 F. Supp. 2d 385, 389 (W.D.N.Y. 2010) (citing *Gulino*. 460 F.3d at 373); *see also DiPilato v. 7-Eleven, Inc.*, 662 F.Supp.2d 333, 346 n.3 (S.D.N.Y. 2009) (noting that "the Second Circuit has not adopted the broader 'interference test' which determines whether an 'indirect' employer relationship exists") (citing *Gulino*, 460 F.3d at 374). In *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318 (1992), issued eleven years after *Spirt*, the Supreme Court held that the common-law should supply the definition of "employee" in the absence of a statutory definition. According to the Second Circuit, *Darden* "eliminate[d] the chief rationale for employing a broader test in the context of anti-discrimination legislation -- namely, that a more liberal construction would better effect the remedial purposes of the . . . legislation." *Gulino*, 460 F.3d at 377 (quoting *Frankel v. Bally, Inc.*, 987 F.2d 86, 90 (2d Cir. 1993)). *Id.* at 377. Irrespective of any continuing precedential force *Spirt* may have, the instant case does not fall under the narrow rule articulated in *Gulino*. To bring a post-*Gulino* claim of interference liability in this Circuit, Plaintiff would need to allege that his employer had delegated a "core" employment function to a third party who acted toward him in an unlawful manner. *Id.* at 377. In the instant case, Felder's employer did not delegate to the USTA an employment responsibility analogous to the administration of a retirement plan or, it appears, any employment responsibility at all. The Second Circuit's limited view of *Sibley* interference liability thus forecloses Felder's ability to characterize the USTA as his employer for purposes of Title VII and § 1981.

2014). *See also York v. Ass'n of the Bar*, 286 F.3d 122, 127 (2d Cir. 2002) ("[B]y the terms of the statute . . ., [NYSHRL] claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." (citing *Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir.1995))); *Fitzgerald v. Signature Flight Support Corp.*, 2014 WL 3887217, at *5 (S.D.N.Y. Aug. 5, 2014) ("[O]nce a plaintiff elects to pursue his claims before the NYSDHR, a federal district court is barred from later hearing his case."). There are two exceptions to the election of remedies rule. *See Skalafuris v. City Univ. of N.Y.*, 2010 WL 1050299, at *2 (S.D.N.Y. 2010), *aff'd sub nom. Skalafuris v. City of N.Y.*, 444 F. App'x 466 (2d Cir. 2011). The first exception applies when the NYSDHR dismisses the claim for administrative convenience, and the second applies when the claim is filed with the NYSDHR only by way of an automatic referral from the EEOC. *See York v. Ass'n of the Bar*, 286 F.3d 122, 127 n.2 (2d Cir. 2002). Neither exception applies here. In the instant case, Felder filed his complaint with the NYSDHR prior to bringing this federal lawsuit, and it was dismissed for lack of probable cause. His election of remedies therefore divested this Court of subject matter jurisdiction over his NYSHRL claims. Accordingly, those claims are dismissed with prejudice.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss is GRANTED. Plaintiff is granted leave to replead his Title VII and § 1981 claims in an Amended Complaint. If Plaintiff chooses to file an Amended Complaint, he must do so by **December 1, 2018**.[5] The Clerk of

---

[5] Plaintiff is advised that he may seek advice from the legal clinic in this District to assist people who are parties in civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court (and therefore, among other things, cannot accept filings on behalf of the Court, which must still be made by any unrepresented party through the Pro Se Intake Unit). The Clinic is located in the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in Room LL22, which is just inside the Pearl Street entrance to that Courthouse. The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed. Plaintiff can make an appointment in person or by calling 212-659-6190.

the Court is respectfully directed to terminate the motion, Doc. 28, and to mail a copy of this Opinion and Order to Plaintiff.

    It is SO ORDERED.

Dated:    October 30, 2018
           New York, New York

                                                        Edgardo Ramos, U.S.D.J.